CENTER FOR NATIONAL SECURITY STUDIES, et al. (Monica Andres) Appellants,

v.

CENTRAL INTELLIGENCE AGENCY, et al., Appellees.

No. 82–1619.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 15, 1983.
Decided July 22, 1983.

Graeme W. Bush, Washington, D.C., for appellants.

Jeffrey N. Gibbs, Sp. Asst. U.S. Atty. of the Bar of the Supreme Court of the State of N.Y., New York City, pro hac vice, by special leave of the Court, with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., were on brief, for appellees.

Patricia J. Kenney, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellees.

Before TAMM and GINSBURG, Circuit Judges, and JOHN W. PECK,* Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit.

Opinion for the court filed by Senior Circuit Judge JOHN W. PECK.

JOHN W. PECK, Senior Circuit Judge:

Appellant Center for National Security Studies (CNSS) sought disclosure of 12 categories of documents from the Central Intelligence Agency (CIA) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.* CNSS's initial request for release of all documents was refused. Subsequent appeals were acknowledged by CIA but no action was taken. CNSS then filed suit in the United States District Court for the District of Columbia seeking judicial review of CIA's action. In a 15-count complaint appellant CNSS requested that CIA disclose each category of documents. Both parties moved for summary judgment as to count VII of the complaint which requested disclosure of documents containing the budget figure for the National Foreign Intelligence Program (NFIP) for fiscal year 1979. The district judge granted appellee CIA's motion for summary judgment. Appellant CNSS appeals this order to this court.

CNSS is a nonprofit public interest project based in Washington, D.C. Among its many activities, members of CNSS participate in discussions of national security matters through teaching at universities, testifying before Congress, and by publishing a monthly newsletter providing information on national security topics. During the past decade, under the leadership of its director, Morton H. Halperin, CNSS has taken a particular interest in the activities of the CIA. Through the use of FOIA, CNSS has secured information from various government agencies, including CIA, which it has used to both stir discussion of national security matters and to inform the general public.

Beginning in 1976 members of CNSS filed a series of FOIA requests with CIA seeking disclosure of documents concerning the activities and functions of the Agency. Each request was denied by CIA. Subsequent appeals by CNSS, while acknowledged by CIA, were not acted upon.

On August 11, 1978 CNSS[1] sought release of files containing the fiscal year 1979 budget figure for the CIA, the particular claim at issue in this appeal. On September

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

1. Monica Andres, named appellant in this case, filed the FOIA request. Andres is the librarian of CNSS and is in charge of filing such requests.

7, 1978 Charles Savige, on behalf of George Owens, Information and Privacy Coordinator for CIA, denied the request citing exemptions 1 and 3 of FOIA.[2]

Pursuant to 5 U.S.C. § 552(a)(4) of FOIA, CNSS filed suit in the United States District Court for the District of Columbia seeking judicial review of CIA's refusals to disclose 12 categories of documents.[3] In count VII of the complaint, at issue in this case, CNSS sought disclosure of the fiscal year 1979 budget figure for the NFIP.[4] The NFIP budget figure constituted the amount of money allocated to all agencies in the United States government concerned with national intelligence matters including CIA, NSA, the Department of State and several others. Appellee CIA sought summary judgment on count VII, the NFIP budget figure, again claiming protection under FOIA exemptions 1 and 3. CIA, in relying on exemption 1, cited Executive Order 12065 and introduced an affidavit by Director of Central Intelligence William Casey in support of its motion. Casey stated that disclosure of the NFIP budget figure posed a "reasonable threat to national security." CIA based its exemption 3 argument on two statutory provisions, 50 U.S.C. §§ 403(d)(3) and 403g (1981).

CNSS also sought summary judgment on count VII, the NFIP budget figure. It argued that testimony before Congress by former Director of Central Intelligence Admiral Stansfield Turner in 1978 as a matter of law refuted the contentions that disclosure of the NFIP budget figure was prohibited by Executive Order 12065, that its release posed a reasonable danger to national security, and that its release was prohibited by statute.

The district judge granted appellee CIA's motion for summary judgment. He held

that as a matter of law exemption 1, on the basis of the Casey affidavit and Executive Order 12065, protected CIA from disclosure. CNSS appeals to this court arguing the district judge improperly granted CIA summary judgment since material questions of fact remained to be decided and, in the alternative, that the district judge should have granted its motion for summary judgment.

Before reaching the merits presented in this appeal we must determine whether we have jurisdiction to render a decision. Appellee CIA urges that we lack jurisdiction in this case since the district court has not reached a final judgment terminating all issues in dispute between the parties, and that this court therefore lacks jurisdiction under 28 U.S.C. § 1292(a)(1). We agree.

Federal courts are courts of limited jurisdiction. That jurisdiction is determined by Congress by statute within the confines of the Constitution. In general federal appellate courts have jurisdiction to review only final judgments of a district court.[5] 28 U.S.C. § 1292, however, carves out a limited category of interlocutory orders where a circuit court has jurisdiction to review. In particular § 1292(a)(1) allows review of orders by a district judge "granting, continuing, modifying, refusing or dissolving injunctions . . . ." 28 U.S.C. § 1292(a)(1).

Not every order of a district court denying injunctive relief, however, is reviewable through an interlocutory appeal. In *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), the Supreme Court held that a summary judgment motion denying a permanent injunction was not immediately appealable under § 1292(a)(1) where the district judge's decision that there were tri-

---

**2.** *See* 5 U.S.C. § 552(b)(1) & (3). In a letter dated September 15, 1978 CNSS appealed the denial. Five days later CIA by letter acknowledged the appeal but took no further action thereafter.

**3.** CNSS properly relied on 5 U.S.C. § 552(a)(6)(A) & (C), contending CIA's delay in denying its various appeals satisfied the FOIA's exhaustion requirements.

**4.** The parties agreed that CNSS could make this change from its initial request for the budget of only CIA and the CIA's denials of that figure constituted exhaustion of administrative remedies for purposes of the statute.

**5.** See 28 U.S.C. § 1291.

able issues "[did] not settle or even tentatively decide anything about the merits of the claim." The Court declared its decision was impelled by the congressional policy against piecemeal appeals during the pendency of an action in the district court. Allowing such an appeal would open the floodgates to numerous appeals, hindering the effective administration of justice. *Id.* at 24–25, 87 S.Ct. at 194–195.

Two later Supreme Court holdings further illuminated the proper approach for determining appealability of district court orders having the practical effect of denying injunctive relief. In *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978), the Court held that no jurisdiction existed under § 1292(a)(1) where a petitioner sought review of a district court order denying class certification. In denying class certification the district judge was not required to reach the merits of petitioner's individual claim. Further, no serious or irreparable harm would result from delaying review of this question until rendition of final judgment in the case. In *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), the Court found jurisdiction under § 1292(a)(1) where petitioner appealed a district judge's refusal to enter a decree in support of a settlement in a Title VII dispute. The Court explained that serious, perhaps irreparable, injury to the petitioner would occur if decision on the appeal was delayed until after final judgment. *Id.* at 86–89, 101 S.Ct. at 997–999 (irreparable harm included cost of litigation which might be avoidable if the settlement agreement was approved).

In reliance on older Supreme Court precedents, however,[6] lower federal courts have continued to allow interlocutory appeals from orders having the practical effect of denying injunctions where such orders involve a ruling on the merits of a case. *Tokarcik v. Forest Hills School District,* 665 F.2d 443, 447 (3d Cir.1981), *cert. denied sub*

*nom. Scanlon v. Tokarcik,* —— U.S. ——, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982); *Miller v. Bell,* 661 F.2d 623, 625 (7th Cir.1981), *cert. denied sub nom. Miller v. Webster,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982); *Laffey v. Northwest Airlines, Inc.,* 642 F.2d 578, 584 n. 49 (D.C.Cir.1980); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 461 F.2d 1040 (2d Cir.1972).

Derived from these case precedents, a methodology for determining whether an interlocutory appeal under § 1292(a)(1) from a district judge's order having the practical effect of denying injunctive relief has emerged. If the order fails to address the merits of the case, appeal will lie under § 1292(a)(1) only if appellant can show some serious, perhaps irreparable, harm resulting from delay caused by denial of review. When, however, the order involves a decision directly addressing the merits of the case, an immediate appeal is available under § 1292(a)(1).

In this case the initial question is whether the district judge's order granting summary judgment for CIA was a denial of injunctive relief. Under the FOIA a court's function in reviewing an agency denial of a request for documents is ordinarily to determine whether to order disclosure or to permit an agency to withhold such documents under the exemptions of the act. Clearly such a function is injunctive in nature. CNSS specifically sought injunctive relief in its complaint. We hold, therefore, that the district judge's order granting summary judgment to CIA on count VII, seeking disclosure of the NFIP budget figure, plainly had the practical effect of denying CNSS an injunction requiring release of the figure.

Since the summary judgment order had the practical effect of denying an injunction we next turn to the question of whether the district judge addressed the merits of CNSS's case. Under Rule 56 of the Federal Rules of Civil Procedure only after a district judge, weighing all the evidence and

---

**6.** *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955); *General Electric Co. v. Marvel Rare*

*Metals Co.,* 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932).

drawing all inferences in a light most favorable to the party opposing the motion, determines that no material issue of fact is in dispute may he grant summary judgment.[7] The district judge conducted this weighing process and ruled, as a matter of law, that CIA was protected under exemption 1. Clearly in so doing the district judge ruled on the merits of count VII, concerning the NFIP budget figure, in granting summary judgment for CIA.

In reaching his decision, however, the district judge properly did not address the merits of the remaining eleven claims in CNSS's complaint. Circuit courts have permitted interlocutory appeals under § 1292(a)(1) where issues remained pending in the district court. *Tokarcik, supra* (merits of case resolved by district court; damages question still pending); *Laffey, supra* (predominantly all issues in a complex Title VII case resolved by district court; appeal under § 1292(a)(1) permissible); *Miller, supra* (substantially all issues decided by injunction; however remaining FOIA claim still pending). *Contra Gould v. Control Laser Corp.,* 650 F.2d 617 (5th Cir.1981) (where order denying injunctive relief involved only two of three issues in complaint, no appeal on the merits permissible).[8] This circuit has allowed an interlocutory appeal where all predominant issues were settled in the injunction. *Laffey, supra.*

The order appealed from in this case resolves only a portion of CNSS's overall case. In such a situation we find the Supreme Court's analysis in *Carson* persuasive. In carefully balancing the competing goals of § 1292(a)(1) and the prevention of piecemeal appeals the Court declared that: "Unless a litigant can show that an interlocuto-ry order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." *Carson, supra* at 84, 101 S.Ct. at 997. Recent court decisions in the wake of *Carson* have followed the Supreme Court's lead. *Kartell v. Blue Shield of Massachusetts, Inc.,* 687 F.2d 543, 552 (1st Cir.1982); *United States v. RMI Co.,* 661 F.2d 279, 281–82 (3d Cir.1981); *Plymouth County Nuclear Information Comm., Inc. v. Boston Edison Co.,* 655 F.2d 15, 17–18 (1st Cir. 1981); *Gould, supra.* Such an approach has the advantage of allowing interlocutory appeals where a serious, perhaps irreparable, injury would occur while at the same time preventing an overburdening flood of appeals in the courts of appeals.[9]

Since the order here did not affect predominantly all of the merits in the case the final inquiry is whether denial of relief under § 1292(a)(1) would cause serious, perhaps irreparable, injury to CNSS. Appellants contend that Congress by enacting § 552(a)(4)(D) of the FOIA intended that courts should entertain appeals such as this one, or alternatively that delay in reviewing the district judge's denial would cause irreparable harm due to the information becoming stale. We disagree with both arguments.

■ The language of § 552(a)(4)(D) plainly fits the overall pattern of FOIA, emphasizing swift resolution of disputes over whether to disclose information. It provides:

Except as to cases the court considers of greater importance, proceedings before the district court, as authorized by this

---

7. See Fed.R.Civ.P. 56(c).

8. In *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court allowed appeal from an order denying a request to forego payment of a security deposit. The Court held that where an issue is separable from the remaining claims in the lawsuit but would have a detrimental effect on the remainder of the lawsuit, an interlocutory appeal is permissible. This approach, however, is inapposite in this case where no allegation has been made that disposition of this issue would in any way impact remaining claims before the district court.

9. A plaintiff always has the option of seeking certification under Rule 54(b), Fed.R.Civ.P., if he wishes to take an immediate appeal. Failure to seek such certification, of course, in no way affects jurisdiction under § 1292(a)(1).

subsection, and appeals therefrom, take precedence on the docket over all cases and shall be assigned for hearing and trial or for argument at the earliest practicable date and expedited in every way. There is no indication in either the FOIA or its legislative history, however, that suggests this emphasis on prompt disclosure would permit circumvention of traditional adjudicative procedures. *Cf. NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 238–39, 98 S.Ct. 2311, 2324–2325, 57 L.Ed.2d 159 (1978). Absent a clearer indication that Congress desired such a change, therefore, we think subsection (a)(4)(D), beyond its plain language to the contrary, is not intended to disrupt the traditional mechanism for handling appeals.

We similarly disagree with CNSS's contention that § 552(a)(4)(D) embodied a congressional intent that any delay in resolving a FOIA dispute would constitute serious, perhaps irreparable, harm. While the legislative history of the 1974 amendments to FOIA indicates Congress was concerned with preventing administrative delay in the resolution of FOIA claims, there is nothing to indicate Congress in any way sought to alter judicial mechanisms for handling of FOIA appeals beyond the expressed language of the statute.[10]

Appellant CNSS argues that delay in this particular case resulting from our refusal to entertain its interlocutory appeal would cause serious, perhaps irreparable, harm. Again we disagree. At the outset of this lawsuit CNSS had virtually total control on the presentation of its case. It chose to appeal count VII rather than completing litigation of all claims presented to the district judge. There is no evidence that any other claim presented by appellant will be adversely affected by our refusal to address this interlocutory appeal and wait until a final judgment is rendered in the case.[11]

 Since CNSS has failed to show serious, perhaps irreparable, harm resulting from denial of review we lack jurisdiction under 28 U.S.C. § 1292(a)(1) to review the district judge's grant of summary judgment to CIA on count VII. This decision does not address the merits of the district judge's order, nor does it preclude a timely review after final judgment is rendered. With these facts in mind we remand this case back to the district court for proceedings consistent with this opinion.

---

10. Subsection (a)(4)(D) provides only that FOIA cases will be handled expeditiously. This is done through administrative processes such as preferential docketing.

11. Again, CNSS plainly had the opportunity to seek certification of this claim as a final judgment under the provisions of Rule 54(b), Fed.R. Civ.P. While such failure in no way influences our decision in this case, it was an avenue available to CNSS had it wished to expedite resolution of count VII.