**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2325
_____

CHERYL HARRIS, Co-administratrix of the Estate
of Ryan D. Maseth, deceased;
DOUGLAS MASETH, Co-Administrator of the Estate
of Ryan D. Maseth, deceased,

v.

KELLOGG BROWN & ROOT SERVICES, INC.,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court  No. 2-08-cv-00563
District Judge: The Honorable Nora B. Fischer

_____

Argued June 22, 2010

Before: SMITH, FISHER, and COWEN, *Circuit Judges*

(Filed: August 17, 2010)

Patrick K. Cavanaugh (argued)
Stephen J. Del Sole
William S. Stickman, IV
Del Sole Cavanaugh Stroyd LLC
200 First Avenue
Suite 300, The Waterfront Building
Pittsburgh, PA 15222
        *Counsel for Appellee*

Raymond B. Biagini
Kurt J. Hamrock
Michelle L. Hylton
Daniel L. Russell, Jr.
McKenna, Long & Aldridge
1900 K Street, N.W.
Washington, DC 20006
        *Counsel for Appellant*

John R. Dingess
Joseph L. Luciana, III (argued)
Dingess, Foster, Luciana, Davidson & Chleboski LLP
20 Stanwix Street
PNC Center, Third Floor
Pittsburgh, PA 15222
        *Counsel for Appellant*

William D. Wickard
K&L Gates
210 Sixth Avenue
Pittsburgh, PA 15222
        *Counsel for Appellant*

---

OPINION

---

SMITH, *Circuit Judge.*

This case raises interesting and important questions about the scope of the political question doctrine and the Federal Tort Claims Act's "combatant activities" exception. We do not reach those questions now, however, because they are not properly before us. We must dismiss this premature appeal for lack of jurisdiction.

## I.

This appeal arises from the accidental death of Staff Sergeant Ryan Maseth, an active duty Army Ranger and Green Beret serving in Iraq. On January 2, 2008, Sergeant Maseth was showering in his quarters when the electric water pump servicing the building short-circuited. Because the building's electrical system was not properly grounded, a charge flowed through the pipes and water, shocking Sergeant Maseth and inducing cardiac arrest.

His parents, Cheryl Harris and Douglas Maseth (collectively, "Plaintiffs") filed a wrongful death and survival action against Kellogg Brown & Root Services, Inc. ("KBRSI")

3

in Pennsylvania state court. KBRSI is a government contractor that performs various services for the United States military in combat zones, including Iraq. Pursuant to a contract with the Army, KBRSI was responsible for electrical maintenance in the building in which Sergeant Maseth was electrocuted. Plaintiffs allege that the electrical problems in Sergeant Maseth's building were well-known; that KBRSI negligently failed to repair them; and that this negligence caused the death of their son.

After properly removing the suit to the United States District Court for the Western District of Pennsylvania,[1] KBRSI moved to dismiss under Rule 12 of the Federal Rules of Civil Procedure. KBRSI identified two grounds for dismissal. First, it argued that the case presented non-justiciable political questions. *See Baker v. Carr*, 369 U.S. 186, 217 (1962). Second, it argued that it was immune from suit under the "combatant activities" exception to the Federal Tort Claims Act's waiver of sovereign immunity. *See* 28 U.S.C. § 2680(j) (preserving immunity to "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war"). The parties conducted several months of discovery related to this motion.

On March 31, 2009, the District Court denied the motion to dismiss without prejudice. On the political question issue, it

_____

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(a).

4

concluded:

> Upon consideration of the present record . . . the Court finds that Plaintiffs' claims do not present non-justiciable political questions . . . . The principles of separation of powers will not be violated by the Court resolving the merits of Plaintiffs' claims. Accordingly, [KBRSI's] motion to dismiss Plaintiffs' claims based on the political question doctrine is denied, without prejudice. If further factual development illuminates the presence of political questions in this action, [KBRSI] may renew its motion at that time.

The Court also held that KBRSI was not entitled to immunity under the combatant activities exception "at this time" but emphasized that its decision was informed by the fact that only "limited discovery" had been conducted to date.

KBRSI sought certification for an interlocutory appeal under 28 U.S.C. § 1292(b). That too was denied. The District Court concluded first that its March 31 order did not involve a "controlling" question of law. *See* 28 U.S.C. § 1292(b). It also held that there was no substantial basis for difference of opinion, and that allowing an interlocutory appeal would not materially advance the ultimate termination of the litigation. *Id.* The District Judge again noted that the case was in the early stages of discovery, and that KBRSI's motion to dismiss was denied

5

without prejudice. She reiterated that she would entertain a renewed motion, if one was warranted in light of the facts obtained through further discovery. In the interim, however, she thought Plaintiffs should have the opportunity to conduct merits discovery—of which there had been virtually none, nearly a year and a half after Sergeant Maseth's death—without the delay that an appeal would inevitably cause.

Instead of proceeding in the District Court, KBRSI immediately filed a Notice of Appeal. It argues that the District Court erred by rejecting its political question and § 2680(j) defenses. On May 7, 2009, we ordered the parties to provide briefing as to whether we have jurisdiction. KBRSI insists that we do; Plaintiffs disagree.

## II.

28 U.S.C. § 1291 gives us jurisdiction over the "final decisions" of the district courts. "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). KBRSI concedes that the order denying its motion to dismiss does not fit this description. It argues, however, that the order is immediately reviewable under the collateral order doctrine set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). This doctrine "is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a

6

'practical construction' of it," *Digital Equip. Corp. v. Desktop Direct*, 511 U.S. 863, 867 (1994) (quoting *Cohen*, 337 U.S. at 546), which recognizes that "[w]hile a final judgment always is a final decision, there are instances in which a final decision is not a final judgment." *Abney v. United States*, 431 U.S. 651, 658 (1977) (quoting *Stack v. Boyle*, 342 U.S. 1, 12 (1951) (Jackson, J., concurring in part)).

To establish collateral order jurisdiction, KBRSI must show that the District Court's order (1) conclusively determined (2) "an important issue completely separate from the merits of the action" and (3) "would be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006). We conclude that the order appealed did not "conclusively determine" whether KBRSI could successfully invoke the political question doctrine or the combatant activities exception. Therefore, the *Cohen* test is not satisfied, and we need not address the other two prongs of the test. *Jones v. Lilly*, 37 F.3d 964, 966 (3d Cir. 1994) (noting that all three prongs of the *Cohen* test must be satisfied before collateral order review is appropriate).

The Supreme Court has used varying language to implement the "conclusively determined" prong of *Cohen*, but we perceive no change in the governing standard. The Court has described *Cohen* as requiring a "fully consummated decision" and "a complete, formal, and . . . final" resolution of the disputed issue. *Abney*, 431 U.S. at 659. It has allowed

7

collateral order review where there was "no basis to suppose that the District Judge contemplated any reconsideration of his decision," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12-13 (1983), and prohibited it where the relevant order was left "subject to revision." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1981). More recently, the Court has explained that the district court's ruling must be "the final word on the subject addressed." *Digital Equip. Corp.*, 511 U.S. at 868. "Tentative" rulings can never satisfy the "conclusively determined" requirement. *See, e.g.*, *id.* at 869 n.2; *Coopers & Lybrand*, 437 U.S. at 469 n.11; *Cohen*, 337 U.S. at 546.

Consistent with this authority, we have long held that collateral order review requires "a final rather than a provisional disposition of an issue." *Rodgers v. U.S. Steel Corp.*, 508 F.2d 152, 159 (3d Cir. 1975). An illustrative case is *Metex Corp. v. ACS Industries*, *Inc.*, 748 F.2d 150 (3d Cir. 1984). There, plaintiff Metex sued a competitor for unfair trade practices. In furtherance of that claim, it sought certain records from the Department of Justice under the Freedom of Information Act ("FOIA"). When the DOJ resisted, Metex joined it as a defendant in its unfair trade practices claim, then moved for summary judgment on the FOIA issue. The district court denied the motion. Metex immediately appealed. We dismissed for lack of appellate jurisdiction, because the "district court did not treat its ruling on the summary judgment motion as final; rather, it indicated that it was prepared to reconsider the motion at a

8

later time." *Id.* at 153. We held that "[b]ecause the district court explicitly left open renewed consideration of the FOIA claim, the order was not 'conclusively determined' within the meaning of *Cohen*." *Id.* That decision echoed our holding in *Lusardi v. Xerox Corp.*, 747 F.2d 174 (3d Cir. 1984). In that case, plaintiffs filed a purported class action against Xerox, alleging unlawful age discrimination. After a hearing, the district court conditionally certified the class. It ordered Xerox to provide plaintiffs with a list of all potential claimants, and plaintiffs to provide notice of the lawsuit to everyone on that list. *Id.* at 175-76. The court proposed using the class notice, and an accompanying questionnaire, as a "discovery device that ultimately would enable it to determine whether a group of 'similarly situated' individuals" existed. *Id.* at 176. It intended to decertify the class "if the evidence elicited by the questionnaires and consent forms did not demonstrate an adequate number of sufficiently similar claims." *Id.* When Xerox appealed the conditional certification order, we dismissed for lack of jurisdiction. We held that the first prong of *Cohen* was not satisfied because the order was explicitly made "subject to revision by the district court" depending on the responses to the questionnaire. *Id.* at 177. We noted that such "conditional certification [could] in no way be termed a final disposition of the class action issue." *Id.* at 177-78. Other cases in this Circuit have unfolded similarly. *See, e.g.*, *New York v. U.S. Metals Ref. Co.*, 771 F.2d 796, 799 (3d Cir. 1985) (rejecting jurisdiction under *Cohen* because the district court "intend[ed] to reconsider its order" as soon as certain fact-finding was completed);

9

*Silberline Mfg. Co. v. Int'l Nickel Co.*, 569 F.2d 1217, 1220 (3d Cir. 1977) (per curiam) (finding collateral order doctrine inapplicable where district court had not yet "settled [the disputed issues] conclusively"). *Cf. Fed. Ins. Co. v. Rubin & Co.*, 12 F.3d 1270, 1280 (3d Cir. 1993) (finding *Cohen* test satisfied where the district court rejected a claim of sovereign immunity, and "gave no indication that it would reopen [that] issue at a later pre-trial stage of the proceedings").

These cases convince us that the District Court's March 31 order did not conclusively determine the disputed issues in this case. Judge Fischer made clear that her rejection of KBRSI's political question and § 2680(j) defenses was not necessarily her "final disposition" of these issues. *Cohen*, 337 U.S. at 546. In fact, she did so twice—first in denying KBRSI's motion to dismiss, and again in denying certification for interlocutory appeal under §1292(b). Her ruling was nothing resembling a "complete, formal, and . . . final rejection" of KBRSI's position. *Abney*, 431 U.S. at 659. Rather, it was a "tentative" ruling based solely on the limited discovery that had been conducted to date. *Digital Equip. Corp.*, 511 U.S. at 869 n.2. As in *Metex*, the "district court did not treat its ruling as final; rather, it indicated that it was prepared to reconsider the motion at a later time." 748 F.2d at 153. Under these circumstances, accepting KBRSI's appeal now would not be "review"; it would be improper "intervention," if not outright "intrusion." *Cohen*, 337 U.S. at 546.

10

KBRSI's argument for jurisdiction relies chiefly on *Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007), and *U.S. Steel Corp. v. United Mine Workers*, 456 F.2d 483 (3d Cir. 1972). KBRSI cites these cases for the general proposition that collateral order jurisdiction may exist "notwithstanding that the order appealed was issued 'without prejudice.'" That principle is true as far as it goes, but it does not go nearly far enough to help KBRSI. Both *Frederico* and *U.S. Steel* are distinguishable.

In *Frederico*, the plaintiff filed a class action lawsuit against Home Depot in state court. The complaint sounded in fraud and breach of contract. Home Depot removed to federal court, and the district court dismissed the complaint without prejudice pursuant to Rules 9(b) and 12(b)(6). *Frederico*, 507 F.3d at 190-91. The plaintiff chose not to amend her complaint to remedy the deficiencies noted by the district court. Instead, she appealed. We raised the issue of jurisdiction *sua sponte*, and noted our prior holding that "a dismissal with leave to amend will be treated as a final order if the plaintiff has elected to stand upon the original complaint," rather than amend it. *Id.* at 192 (internal quotations omitted). Because the plaintiff maintained that her complaint was legally sufficient, and clearly signaled her intent to stand upon it, we treated the dismissal without prejudice as a final decision. *Id.* Accordingly, we held that we had jurisdiction under § 1291, notwithstanding the district court's dismissal "without prejudice." We noted that allowing appellate review under these circumstances was "consistent with the goal of the final judgment rule—to prevent piecemeal

11

litigation—because if plaintiff cannot or will not bring a second action, there is no risk of multiple litigation." *Id.* (internal quotations omitted).

*U.S. Steel* involved an attempt by certain steel and mining interests to enjoin a work stoppage organized by labor unions. 456 F.2d at 485. A preliminary injunction issued, but was vacated on appeal. When the matter returned to the district court, the parties entered into a stipulation which "end[ed] the lawsuit for all practical purposes." *Id.* at 486. The unions then filed a motion to recover litigation costs incurred in the injunction proceedings. The district court denied that motion without prejudice, and the unions promptly appealed. We held that we had jurisdiction under *Cohen*, because "the order appealed from, although in form interlocutory, was *in practical effect final* on the issue" of costs, as it was clear that "no further proceedings would take place in the district court." *Id.* at 487 (emphasis added).

The differences between these cases and the case before us are apparent. In *Frederico* and *U.S. Steel*, we had jurisdiction because it was clear that the district court had rendered its final disposition of the disputed issues, notwithstanding the "without prejudice" designation. In other words, in both cases the order appealed was "the final word on the subject addressed," *Digital Equip. Corp.*, 511 U.S. at 868, and thus there was no danger of duplicative appeals. Here, there are no such indicia of finality. The District Court explicitly invited the parties to revisit the

12

disputed issues as the factual record developed.

Nor would asserting jurisdiction now comport with the goal of the finality rule—avoiding piecemeal litigation. *Frederico*, 507 F.3d at 192. It takes little imagination to foresee how reviewing the District Court's ruling now could undermine that goal. Suppose we undertook review here and concluded that, on the record before us, no political question existed. We would then remand the case, and presumably, discovery would continue. But because the presence or absence of a political question is such a fact-intensive inquiry, *see Baker*, 369 U.S. at 217, a better-developed record could give rise to another colorable motion to dismiss.[2] Suppose that this time, the District Court granted KBRSI's motion, and Plaintiffs appealed.[3] We

---

[2] Indeed, KBRSI has already informed the District Court that it intends to file a renewed motion to dismiss and/or a summary judgment motion once merits discovery is completed.

[3] This is not a far-flung hypothetical. It is exactly what happened in *Carmichael v. Kellogg Brown & Root Servs., Inc.*, 572 F.3d 1271 (11th Cir. 2009). There, plaintiffs brought a tort claim against KBRSI based on an accident involving a military convoy in Iraq. KBRSI moved to dismiss on political question grounds. The district court denied that motion and allowed discovery to run its course. KBRSI again moved to dismiss on political question grounds. This time, with the benefit of a complete record, the district court agreed that political questions

13

would again be required to decide the applicability of the political question doctrine to this case. There could be no clearer example of the very redundancy, delay, and waste of judicial resources that the final decision rule is intended to prevent. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981).

## III.

Because the District Court's March 31 order did not conclusively determine the disputed issues in this case, we cannot review it under the collateral order doctrine. We will dismiss the appeal for lack of jurisdiction.

---

were present and dismissed the case. *Id.* at 1279. Plaintiffs appealed, and after a lengthy, fact-intensive analysis, the Eleventh Circuit affirmed. If KBRSI had been permitted to appeal after the district court denied its initial motion, the Eleventh Circuit might well have been forced to examine the same case twice in search of political questions.